## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GEORGE WASHINGTON CRANE V,   No. 4:20-CV-00637

   Petitioner.      (Judge Brann)

  v.

D.K. WHITE,

   Respondent.

## MEMORANDUM OPINION

### JULY 31, 2020

Petitioner George Washington Crane V ("Crane"), a federal inmate in the custody of the Federal Bureau of Prisons ("BOP"), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on April 17, 2020, alleging that his due process rights were violated in the context of prison disciplinary proceedings held at the Federal Correctional Institution at Fairton, New Jersey.[1]

The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I. BACKGROUND

On  October 4, 2018, Crane received Incident Report 3177457 charging him with Prohibited Act Code 201, Fighting with Another Person.  The reporting officer described the incident as follows:

---

[1] Doc. 1.

> On October 4, 2018, at approximately 5:15 pm, I, Officer C. LaRoche, witnessed two inmates involved in a fight inside camp housing. I was at the Officer's station when I heard what sounded like an altercation happening near the phone room. I went around the Officer's station and witnessed two inmates, Crane, George (82203-083) and Donnelly, Michael (74003-066), actively engaged in a fight outside the phone room. Both inmates were on the ground, holding onto each other's torsos. I witnessed Donnelly throwing punches towards Crane while they were still holding onto each other. I announced "fight in the camp" over the radio and then immediately issued a direct order for the inmates to stop fighting. They complied immediately. I kept both inmates separated until more staff arrived. Both inmates were handcuffed and escorted to the LT's office without further incident.[2]

Crane received the incident report the following day. The investigator advised him of his rights and during the course of the investigation, Crane admitted to the investigator that he was fighting. The investigator referred the matter to the Unit Discipline Committee ("UDC") for further action.[3]

During his UDC hearing, which took place the following day, he stated that the incident report was true as written.[4] The UDC referred the matter to a disciplinary hearing officer ("DHO") stating that the act warranted sanctions not available to the UDC.[5] He received the Notice of Discipline Hearing on October 9, 2018.[6]

---

[2]  Doc. 10-1, p. 23.
[3]  *Id.* at 24.
[4]  *Id.* at 23.
[5]  *Id.*
[6]  *Id.* at 21, 25.

The disciplinary hearing convened on December 6, 2018.[7]  The DHO verbally advised Crane of his rights, noted that he received advanced written notice of the charge on October 5, 2019, recorded that he waived his right to witnesses and a staff representative, and documented that Crane indicated that he understood his rights.[8]

Crane admitted being in a hostile physical altercation but denied any wrong doing.  He specifically stated "[m]ail was getting handed out and I was getting mail for other inmates.  Donnelly told the CO I took a newspaper that didn't belong to me and said taking somebody else's mail is a Federal Offense.  I walked back to my bunk and Donnelly walked past me and made a face.  I told him he was pathetic.  He attacked me.  He pulled my ponytail and we went to the ground.  He started hitting me and I protected my face.  It wasn't a fight."[9]  In finding that Crane committed the prohibited act as charged, the DHO relied on the eyewitness account of the reporting staff member, and his verbal altercation with the other inmate that escalated into a physical altercation.[10]  The DHO concluded the following:

> You admitted having a verbal altercation with inmate Donnelly that turned physical, but denied being in a fight.  You claimed you were attacked.  The DHO took into consideration your statement and determined your defense was flawed.  The prohibited act of fighting is committed when an inmate engages in a hostile, verbal, or physical altercation with another person.  By your own admission you had words with inmate Donnelly that escalated into a physical altercation.  You were wrong for taking another inmate's mail and your comments helped escalate the situation.  Although, [sic] inmate Donnelly may

---

[7]  *Id.* at 21.
[8]  *Id.*
[9]  *Id.*
[10]  *Id.* at 22.

3

have initiated the physical altercation, you chose to become an active participant in the incident and you are responsible for your own actions.

Based on the eyewitness account of the reporting officer and your partial admission, the DHO finds the greater weight of the evidence indicates you did commit the prohibited act of Fighting with Another Person, Code 201.[11]

The DHO sanctioned Crane with fifteen days disciplinary segregation, which was suspended pending fifteen days of clear conduct, and disallowed twenty-seven days of good conduct time.[12]

Crane was transferred from FCI-Fairton to the LSCI Allenwood on January 14, 2019.[13]  He alerted his unit manager at Allenwood of the non-receipt of the DHO's report.[14]  After failed attempts to obtain the report through normal channels, on May 6, 2019, the unit manager notified the Administrative Remedy Coordinator for the Northeast Regional Office that Crane had been unable to obtain the DHO report through appropriate channels.[15]  On December 6, 2019, Crane received the DHO report.[16]  On December 13, 2019, he appealed the DHO's findings.[17]  The Central Office denied the appeal finding the determination of the DHO to be reasonable and supported by the evidence and the sanctions imposed to be commensurate with the severity level of the offense.[18]  The Central Office further

---

[11] *Id.*
[12] *Id.*
[13] Doc. 7-3.
[14] *Id.*
[15] *Id.*
[16] Doc. 7-4, p. 3.
[17] Doc. 7-1
[18] Doc. 1, p. 11.

concluded that there were no due process violations during the course of the disciplinary hearing process and that the delay of providing him with a copy of the DHO's report did not adversely affect him as he was able to avail himself of the administrative appeal procedure.[19]

Presently, Crane is seeking reinstatement of twenty-seven days of good conduct time.[20]

## II.   ANALYSIS

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law."[21]   Federal inmates possess a liberty interest in good conduct time because it directly impacts the duration of confinement[22]   Therefore, Crane's claim, that his due process rights were violated in the context of the disciplinary hearing process and that these violations resulted in a loss of good conduct time, is properly the subject of this habeas petition.[23]

The BOP disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011).   These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or

---

[19]   *Id.*
[20]   *Id.* at 8.
[21]   U.S. CONST. amend. V.
[22]   *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).
[23]   *See Sandin v. Conner*, 515 U.S. 472 (1995).

attempt to violate, institutional rules.  The process is initiated with filing an incident report and conducting an investigation.[24]   Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator.[25]  The inmate is entitled to receive initial notice of the incident, which is "ordinarily" provided within twenty-four hours of staff becoming aware of the inmate's involvement, 28 C.F.R. § 541.5(a), and advance written notice of the charges at least twenty-four hours prior to commencement of the DHO  hearing,"[26]

Following the investigation, the matter is referred to the UDC for an initial hearing.[27]  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.[28]   If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing.[29]  Offenses such as Fighting with Another Person in the High Severity category carry a possible sanction of, *inter alia*, loss of good conduct time credits.[30] In the event that a matter is referred for a hearing, the Warden is required to give the inmate advance written notice of the charges no less than twenty-four hours before the DHO hearing and offer the inmate a full-time staff member to represent him at

---

[24]   28 C.F.R. § 541.5.
[25]   28 C.F.R. § 541.5(b).
[26]   28  C.F.R.  §  541.8(c).
[27]   28 C.F.R. § 541.7.
[28]   *Id.*
[29]   *Id.*
[30]   28 C.F.R. § 541.3.

the DHO hearing.[31]

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to submit names of requested witnesses and have them called to testify and to present documents.[32]  The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably available," and need not call repetitive or adverse witnesses.[33]  The inmate has the right to be present throughout the hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion."[34]  The DHO must "consider all evidence presented during the hearing."[35]  The decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."[36]  The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, the findings and decisions, the specific evidence relied on, and the reasons for the sanctions imposed.  A copy must be delivered to the inmate.[37]

The BOP's disciplinary procedures are in accord with due process requirements.  Specifically, when a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain

---

[31]   *Id.* at § 541.8 (c) and (d).
[32]   *Id.* at § 541.8(f).
[33]   *Id.* at § 541.8(f)(2) and (3).
[34]   *Id.* at § 541.8(e).
[35]   *Id.* at § 541.8(f).
[36]   *Id.*
[37]   *Id.* at § 541.8(f)(2).

due process protections:  1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; 3) assistance in presenting a defense if the inmate is illiterate; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action.[38]

Importantly, the decision of the DHO will be upheld if there is "some evidence" to support the decision.[39]  The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."[40]  Judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support.[41]

Crane received adequate and timely written notice before both the UDC and DHO proceedings.  He was notified of his right to remain silent before both proceedings.  He was also afforded the opportunity to call witnesses and present

---

[38] *See Wolff*, 418 U.S. at 564.
[39] *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Young*, 926 at 1402-03 (applying *Hill* standard to federal prisoner due process challenge to prison disciplinary proceedings).
[40] *Id.* at 455.
[41] *Id.* at 457.

documentary evidence.  His hearing was held before an impartial DHO, and he was provided with a written copy of the DHO's decision, which recited the evidence relied upon and the rationale behind the disciplinary sanctions.

Crane specifically takes issue with the delay in the delivery of the DHO's report.[42]  An inmate is entitled to a "written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."[43] A failure to timely provide a copy of the DHO's report may constitute a violation of a Petitioner's due process rights.[44]  To establish such a violation, however, the inmate must show that he was prejudiced by the prison's failure to timely provide the DHO's report, such as an inability to appeal the decision.[45]  It is clear that Crane pursued an appeal of the DHO's decision after receipt of the report and that the BOP's Central Office adjudicated the appeal.[46]  Because he fails to demonstrate that he was prejudiced by the BOP's failure to timely provide the DHO report, he is not entitled to relief on this claim.[47]

Crane also asserts that "[t]he incident report lacks merit as [he] did not meet the criteria for sanction."[48]   In arriving at a finding of guilt, the DHO specifically

---

[42]  Doc. 1, p. 6.
[43]  *Hill*, 472 U.S. at 454 (citing *Wolff*, 418 U.S. at 563-67).
[44]  *Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016).
[45]  *Id.* (citing *Wilson v. Ashcroft*, 350 F.3d 377, 381 (3d Cir. 2003)).
[46]  Doc. 1, pp. 11, 12.
[47]  *See Griffin*, 640 F. App'x at 184; *see also Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828, 829 (3d Cir. 2007) (upholding denial of habeas relief where petitioner had not timely received copy of DHO report because "the delay had no prejudicial effect on Cook's administrative appeal and thus does not provide a basis for habeas relief").
[48]  Doc. 1, p. 7.

relied on the eyewitness account of the staff member who authored the incident report as well as Crane's partial admission to engaging in a verbal altercation with inmate Donnelly.   The DHO pointed out that "[t]he prohibited act of fighting is committed when an inmate engages in a hostile, verbal, or physical altercation with another person" and emphasized that, by his own admission, Crane had words with inmate Donnelly which escalated into a physical altercation.[49]  It is clear that the finding of guilt for the Prohibited Act Code 201 offense, Fighting with Another Person, has some evidentiary support in the record before the DHO.

Crane also seems to be challenging the severity of sanctions imposed upon him.   Sanctions permitted upon a finding of guilt of a "High Severity Level Prohibited Acts" offense, which includes Prohibited Act Code 201, Fighting with Another Person, include, *inter alia*, forfeit and/or withhold earned statutory good conduct time up to 50% or up to sixty days, whichever is less, disallowance of between 25% and 50% (14-27) of good conduct time credit available for a year, up to 6 months of disciplinary segregation, loss of privileges and monetary fine.[50]  The sanctions imposed on Crane, specifically, the loss of twenty-seven days of good conduct time, and fifteen days disciplinary segregation (suspended), were within the limits prescribed in this regulation.

---

[49]   Doc. 10-1, p. 22.
[50]   28 C.F.R. § 541.3.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense.[51]   Therefore, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive.[52]   The penalties imposed do not work an "atypical and significant hardship" on Crane and do not serve to extend his confinement beyond the expected parameters of his sentence.[53] Consequently, he is not entitled to relief.

## III.   CONCLUSION

Based on the foregoing, the petition for writ of habeas corpus will be denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[51]   *See Rummel v. Estelle*, 445 U.S. 263, 271–74 (1980)." *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir. 2006).

[52]   *Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

[53]   *Sandin*, 515 U.S. at 484-85.

11